UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN MARTICHUSKI and JMI, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-292-TAV-CCS |
| | ) | |
| DAVID HUI WU, BOBBY CHEN SABAS, | ) | |
| and HOSPITALITY INTERNATIONAL | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Motion to Dismiss [Doc. 6] filed by defendant Hospitality International Group, LLC ("HIG"). Defendant HIG moves the Court to dismiss plaintiffs' complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs have responded in opposition [Doc. 13], and HIG has replied [Doc. 16]. For the reasons that follow, the Court will deny HIG's motion.

I.  **Standard of Review**

   A.  **Motion to Dismiss for Lack of Personal Jurisdiction**

A federal plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.

1989)). Thus, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). Here, HIG has submitted two affidavits of David Wu in support of its motion to dismiss [Doc. 6-1; Doc. 16-1], and plaintiffs have submitted an affidavit of John Martichuski along with other evidence, including email communications, in opposition [Doc. 13-1; Doc. 13-2; Doc. 13-3; Doc. 15; Doc. 15-1; Doc. 15-2; Doc. 15-2; Doc. 15-4].

In considering a properly supported and opposed motion to dismiss pursuant to Rule 12(b)(2), the Court may decide the motion on the parties' submissions, permit limited discovery, or hold an evidentiary hearing. *Id.* Upon review of the record in this case, the Court concludes that "the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits." *Serras*, 875 F.2d at 1215. Therefore, the Court elects to rule on the present motion based on the parties' submissions, reserving all factual determinations on the issue of personal jurisdiction for trial. *Id.*

Accordingly, at this stage of the proceedings, "plaintiff[s] need only make a prima facie showing of jurisdiction." *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011) (citation omitted) (internal quotation marks omitted). In deciding whether plaintiffs have made such a showing, the Court views the pleadings and the affidavits in the light most favorable to plaintiffs and does "not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1458).

B.     Motion to Dismiss for Improper Venue

A federal plaintiff also "bears the burden of proving that venue is proper." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). In considering a Rule 12(b)(3) motion to dismiss for improper venue, the Court "may examine facts outside of the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.* (citations omitted). If the Court concludes that venue is not proper in this judicial district, the Court has the discretion to dismiss or transfer the case pursuant to 28 U.S.C. § 1406(a). *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

## II.    Facts

Viewing the parties' submissions in the light most favorable to plaintiffs, the record supports the following prima facie facts. Plaintiff John Martichuski is a Tennessee resident [Doc. 15 p. 1]. He is the owner and president of plaintiff JMI, Inc. ("JMI"), a Tennessee corporation with its principal place of business in Knoxville, Tennessee [*Id.* at p. 1–2]. Mr. Martichuski is a general contractor for restaurant construction projects across the United States, and he often provides general contracting services through JMI [*Id.*].

Defendant HIG is a Florida limited liability company with its principal place of business in Tampa, Florida [Doc. 1 p. 2; Doc. 6-1 p. 1–2]. HIG primarily engages in the development and operation of various fast food restaurant chains across the United States

3

[Doc. 6-1 p. 2]. Defendants Bobby Sabas and David Wu are managers or members of HIG who reside in the State of Nevada [Doc. 1 p. 1–2; Doc. 6-1 p. 1].

The parties' relationship began in 2009, when Mr. Sabas contacted Mr. Martichuski concerning a Chicken Now restaurant project in Johnson City, Tennessee [Doc. 15 p. 3]. At the time, HIG was involved with the construction of a ChinaMax restaurant in Johnson City, Tennessee, and HIG subsequently contracted with Mr. Martichuski "in reference to the construction of the ChinaMax" [*Id.*].[1]

Between approximately 2009 and 2012, Mr. Martichuski individually and on behalf of JMI entered into a number of verbal and written agreements with HIG and its agents, including Mr. Sabas and Mr. Wu, for the provision of general contracting services in connection with the construction of restaurants in various locations outside of Tennessee [*Id.* p. 2–3]. These locations included: Livermore, California; Solano, California; Baltimore, Maryland; Hadley, Massachusetts; Massapequa, New York; Riverhead, New York; Raleigh, North Carolina; Bethel Park, Pennsylvania; and Charleston, South Carolina [Doc. 1 p. 3–6; Doc. 15 p. 2–3].

Along with the parties' agreements for the provision of general contracting services, plaintiffs allege that JMI and Mr. Wu also entered into a partnership agreement

---

[1] HIG disputes plaintiffs' assertions that it initiated contact with plaintiffs through Mr. Sabas in 2009, and that it was involved with the construction of a ChinaMax restaurant in Johnson City, Tennessee [Doc. 16 p. 2; Doc. 16-1 p. 2]. Plaintiffs have filed an affidavit of Mr. Martichuski averring to these facts [Doc. 15 p. 3]. Therefore, the Court does not consider HIG's countervailing assertions of fact at this stage of the proceedings. *Air Prods.*, 503 F.3d at 549 (citing *Theunissen*, 935 F.2d at 1459).

in February of 2011 [Doc. 1 p. 4]. The partnership agreement provided that Mr. Wu would give JMI a legally-binding franchise agreement for JMI to operate a restaurant franchise with defendants [*Id.*].

At all relevant times during the formation and execution of the agreements at issue in this case, Mr. Martichuski was a citizen and resident of Tennessee, and JMI was a Tennessee corporation [Doc. 15 p. 1–2]. Plaintiffs represented to HIG that Knoxville, Tennessee, was their principal place of business [*Id.*]. Over the course of the parties' business relationship, Mr. Martichuski regularly communicated with employees of HIG regarding the negotiation of agreements, execution of agreed-upon work, and payment for services provided [Doc. 15 p. 2–3; *see, e.g.*, Doc. 15-1; Doc. 15-2; Doc. 15-3; Doc. 15-4].

Plaintiffs initiated this action on June 25, 2014 [Doc. 1]. In their complaint, plaintiffs claim that defendants breached the parties' agreements by failing to remit full payment for plaintiffs' services and failing to provide the franchise agreement contemplated by the partnership agreement between JMI and Mr. Wu [Doc. 1 p. 3–10]. Plaintiffs also bring claims for common law fraud, negligent misrepresentation, and civil conspiracy [Doc. 1 p. 7–9]. HIG's motion to dismiss followed.

III.  **Analysis**

    A.  **Personal Jurisdiction**

"A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident

5

defendant." *Theunissen*, 935 F.2d at 1459. Tennessee courts are permitted to exercise personal jurisdiction upon "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6). The due process requirements of the Tennessee Constitution are "co-extensive with those of the United States Constitution." *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 741 (Tenn. 2013) (citation omitted). Therefore, if the exercise of personal jurisdiction passes constitutional muster under the United States Constitution, it is permissible under Tennessee law. *Id* at 740–41.

Federal "[d]ue process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (alterations in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). This requirement "ensures that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citations omitted) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. *Air Prods.*, 503 F.3d at 549–50; *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). "General jurisdiction exists when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir.

6

1997)). In contrast, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Indah*, 661 F.3d at 920 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, —, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted). Because the Court finds that it has specific personal jurisdiction over HIG in this case, the Court does not reach the question of whether it has general personal jurisdiction.

As first set forth in *Southern Machine Company v. Mohasco Industries*, there are three criteria for determining whether the exercise of specific personal jurisdiction over a nonresident defendant is constitutionally permissible:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)) (internal quotation marks omitted).

### 1. The "Purposeful Availment" Requirement

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))

(internal quotation marks omitted). "[T]he purposeful availment requirement 'gives a degree of predictability to the legal system that allows defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Kerry Steel*, 106 F.3d at 150 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Thus, the requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (quoting *Burger King*, 471 U.S. at 475).

Purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Neogen Corp.*, 282 F.3d at 891 (citation omitted) (internal quotation marks omitted). "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of doing business there." *Burger King*, 471 U.S. at 475–76 (internal citations omitted). Consequently, a defendant need not be physically present in the forum state in order to have purposefully availed itself of the privilege of acting there. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). The proper focus of

8

Case 3:14-cv-00292-TAV-CCS   Document 17   Filed 08/14/15   Page 8 of 18   PageID #: 134

the inquiry into purposeful availment is on the "*quality* rather than the *quantity* of the contacts." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

In this case, viewing the evidence in the light most favorable to plaintiffs, HIG contacted plaintiffs in 2009 regarding restaurant construction projects in Tennessee. HIG thereafter initiated a business relationship between the parties in reference to those projects. In the course of this relationship, HIG repeatedly engaged plaintiffs to provide general contracting services for out-of-state projects over a three-year period. During this period of time, the parties had regular discussions via telephone and email regarding the manner in which plaintiffs would provide their general contracting services. Plaintiffs' base of operations for performing these services was located in Tennessee. HIG was aware that plaintiffs' business was located in Tennessee, and payment for services was to be remitted there.

On these prima facie facts, the Court concludes that HIG purposefully initiated, created, and sustained a business relationship and concomitant contractual obligations with a Tennessee corporation and a Tennessee resident. *See Burger King*, 471 U.S. at 473 ("[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." (citations omitted) (internal quotation marks omitted)). Therefore, HIG "could reasonably anticipate being haled into court" in Tennessee. *Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 926 (E.D. Tenn. 2012) (citing *Burger King*, 471 U.S. at 475).

9

HIG argues that it did not purposefully avail itself of the privilege of acting within Tennessee because all of the construction projects at issue in this case were located outside of Tennessee. In support of this argument, HIG cites *Calphalon*, 228 F.3d 718, and *Kerry Steel*, 106 F.3d 147.

In *Calphalon*, an Ohio corporation (Calphalon) filed a federal lawsuit against a Minnesota resident (Jerry Rowlette) in Ohio, seeking a declaration that it had lawfully terminated a contract between the parties. *Calphalon*, 228 F.3d at 720–21. Prior to the lawsuit, Mr. Rowlette had been an exclusive representative for Calphalon in Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. *Id* at 720. The parties' business relationship had lasted for seventeen years, and within the last two years, they had executed a manufacturer's representative agreement that contained an Ohio choice of law provision. *Id* at 720–21. Mr. Rowlette had twice visited Ohio, once for a mandatory sales meeting and once to accompany a client on a tour of Calphalon's facilities. *Id* at 720. After being notified by Calphalon that it did not intend to renew the parties' agreement, Mr. Rowlette sent a demand letter to Calphalon notifying it of claims for breach of contract and unpaid commissions. *Id.* at 720–21. Calphalon's declaratory judgment action followed. *Id.* at 721.

A divided Sixth Circuit panel held that the federal district court in Ohio did not have personal jurisdiction over Mr. Rowlette. *Id.* at 724. In reaching this conclusion, the majority explained that the "mere existence of a contract" is "insufficient to confer personal jurisdiction," *id.* at 722, and that Mr. Rowlette's contacts with Ohio "were

10

Case 3:14-cv-00292-TAV-CCS   Document 17   Filed 08/14/15   Page 10 of 18   PageID #: 136

precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction," *id.* at 723.

Several courts in this circuit have noted that a broad reading of *Calphalon* conflicts with Supreme Court precedent in *Burger King*, 471 U.S. at 473. *See Functional Pathways*, 866 F. Supp. 2d at 925 (collecting cases). As one district court has explained in attempting to reconcile the two cases:

> If there is a distinction to be made between the critical facts in *Calphalon* and *Burger King*, it perhaps can be derived from the absence of any activity by Rowlette himself directed into the forum state. For all that can be determined from the opinion in that case, it appears that Rowlette simply arranged sales in other states and reported on market conditions there. He never remitted payment for any goods to Calphalon's headquarters, nor did he 'reach out beyond' Minnesota for the purpose of deriving the benefit of affiliating with a 'nationwide organization,' as did John Rudzewicz in the *Burger King* case. Moreover, the lawsuit in that case was a declaratory judgment action in which Calphalon sought a ruling that it owed nothing to Rowlette, not that Rowlette had damaged Calphalon.

*Frankenmuth Mut. Ins. Co. v. Appalachian Underwriters, Inc.*, 2004 WL 1406121, at *9 (E.D. Mich. June 21, 2004) (citing *Burger King*, 471 U.S. at 479–80); *see Light Source, Inc. v. Display Dynamics, Inc.*, 2010 WL 2351489, at *6 (E.D. Mich. June 8, 2010) (adopting the reasoning of *Frankenmuth*, 2004 WL 1406121, at *9). The Court agrees with this interpretation of the law.

Here, HIG's contacts with Tennessee involved much more than the "mere existence of a contract." *Calphalon*, 228 F.3d at 722. Based on the prima facie facts,

11

HIG directed activity into Tennessee by reaching out to plaintiffs for the purpose of initiating and sustaining a continuous business relationship there, which carried with it mutual obligations for performance within the state. *See Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 370 (6th Cir. 2006) ("[W]hen a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." (citations omitted) (internal quotation marks omitted)). Therefore, *Calphalon* does not control the outcome of this case.

HIG's reliance on *Kerry Steel* is similarly unavailing. In *Kerry Steel*, a Michigan company (Kerry Steel) had approached an Oklahoma company (Paragon Industries) with an offer to sell steel coils. 106 F.3d at 148. Paragon Industries accepted the offer via telephone and took possession of the steel coils in Illinois, with payment to be remitted in Michigan. *Id.* Upon taking possession of the coils, Paragon Industries refused to pay the full purchase price because the coils allegedly did not conform to agreed quality standards. *Id.* Kerry Steel sued Paragon Industries in federal district court in Michigan. *Id.* The district court held that it lacked personal jurisdiction, and the Sixth Circuit affirmed. *Id.* at 148, 154.

The business relationship in *Kerry Steel* involved a one-time contract for the sale of goods. It required little negotiation, did not recur, and took place entirely outside of the forum state except for Kerry Steel's initial solicitation and the location to which

12

payment was to be remitted. *Id.* at 148. Here, to the contrary, the prima facie facts show that the parties formed a business relationship for the provision of general contracting services, which covered multiple projects over the course of three years. These services, by their very nature, could not be completed at a single point in time and involved regular communication between the parties to and from plaintiffs' principal place of business in Tennessee. Therefore, the nature of the parties' agreements in this case was qualitatively different than the nature of the parties' agreement in *Kerry Steel*, and *Kerry Steel* does not control the outcome here.

Accordingly, viewing the evidence in the light most favorable to plaintiffs, the Court concludes that the "purposeful availment" requirement has been satisfied in this case.

### 2. The "Arising From" Requirement

"The 'arising from' prong is met when the operative facts arise from the defendant's contacts with the state." *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 617 (6th Cir. 2005)). "Physical presence is not required; personal jurisdiction may exist over a defendant if he 'purposefully directs communications into the forum, and those communications form the heart of the cause of action.'" *Id.* (quoting *Intera*, 428 F.3d at 617–18). "'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.'" *Bird*, 289 F.3d at 875 (quoting *CompuServe*, 89 F.3d at 1267).

13

When a defendant has purposefully availed itself of acting in the forum state by entering into a contract with a party there, and "the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state]." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citing *CompuServe*, 89 F.3d at 1267). In other words, "a breach of contract action arises from the defendant's contact with the state because the contract 'is necessarily the very soil from which the action for breach grew.'" *Calphalon*, 228 F.3d at 724 (citation omitted). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Southern Mach.*, 401 F.2d at 384 n.29 (citations omitted).

Here, HIG's contacts with Tennessee are related to the operative facts of the controversy. Although the ultimate goal of the parties' agreements was the physical construction of restaurants in states other than Tennessee, plaintiffs provided the agreed-upon services from their headquarters in Tennessee. For example, the parties regularly communicated electronically about the manner in which plaintiffs were providing their general contracting services, which included directing work and limiting the costs incurred for construction [Doc. 15-2]. Additionally, plaintiffs solicited, selected, and coordinated subcontractors remotely [Doc. 15-3; Doc. 15-4]. Thus, even though the physical manifestation of plaintiffs' efforts occurred elsewhere, Tennessee was the locus of plaintiffs' business resources and at least a portion the work that they performed. HIG allegedly breached the parties' agreements by failing to remit payment for this work.

14

Therefore, viewing the evidence in the light most favorable to plaintiffs, the Court concludes that the cause of action in this case arises from HIG's contacts in Tennessee.

### 3. The Exercise of Personal Jurisdiction is Reasonable

The exercise of personal jurisdiction is reasonable when there is a sufficiently substantial connection between the defendant and the forum state so that the exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (citation omitted) (internal quotation marks omitted). In determining whether the exercise of personal jurisdiction is reasonable, the Court considers "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* at 1268 (citation omitted) (internal quotation marks omitted).

Here, HIG will be somewhat burdened by defending this case in Tennessee as opposed to its principal place of business in Florida. Nevertheless, HIG established contacts with Tennessee when it reached out to a Tennessee corporation and a Tennessee individual for the purpose of receiving general contracting services from them, and entered into a business relationship with them. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). Tennessee has a strong interest in resolving a contract dispute involving a Tennessee business, when the business

15

performed at least a portion of the agreed-upon work within Tennessee. Similarly, plaintiffs have a strong interest in obtaining relief in the state where they reside. And Tennessee is an efficient state in which to resolve the present controversy, because it is the hub of all of the construction projects underlying the parties' dispute.

Moreover, where, as here, the first two *Southern Machine* criteria have been met, an inference arises that the exercise of personal jurisdiction is reasonable, *CompuServe*, 89 F.3d at 1268, and "only the unusual case will not meet this third criterion," *Aristech Chem. Int'l*, 138 F.3d at 628 (citations omitted) (internal quotation marks omitted). HIG does not suggest that this case is "unusual," nor does the record support such a finding.

Viewing the evidence in the light most favorable to plaintiffs, the Court concludes that there is a sufficiently substantial connection between HIG and Tennessee in this case to make the exercise of personal jurisdiction over HIG reasonable. Therefore, all three of the *Southern Machine* criteria have been satisfied, and plaintiffs have made a prima facie showing that the Court has personal jurisdiction over HIG.

**B.     Venue**

It is not enough, however, that a federal action be brought in a court with personal jurisdiction over the defendant. A federal action must also be brought in a judicial district where venue is proper. Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

16

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Thus, a plaintiff may file his or her complaint in "*any* forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *Bramlet*, 141 F.3d at 263 (emphasis added) (comparing the 1990 revisions to the venue statute with the previous provisions of the venue statute); *see Alltech, Inc. v. Carter*, 2010 WL 988987, at *2 (E.D. Ky. Mar. 15, 2010) (explaining that "the issue is not whether this district is the 'best' venue, but whether the district has a 'substantial' connection to plaintiffs' claims, even if other district[s] have greater contacts." (citing *Bramlet*, 141 F.3d at 263)).

"Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 672 (S.D. Ohio 2011) (citations omitted) (internal quotation marks omitted). In determining whether there is a sufficiently substantial connection to the judicial district, "courts focus their inquiry on the defendant's relevant activities." *Id.* (citation omitted).

Here, as discussed above, HIG has a sufficiently substantial connection to the State of Tennessee so as to render the exercise of personal jurisdiction by a Tennessee

court reasonable.  All of the relevant jurisdictional facts of this case are connected to the Eastern District of Tennessee, where HIG engaged the services of plaintiffs, regularly directed communications in the course of the parties' business relationship, and was supposed to remit payment for services.  For the same reasons that there is a sufficiently substantial connection to Tennessee for a Tennessee court to exercise personal jurisdiction over HIG, the Court concludes that the Eastern District of Tennessee is a venue in which "a substantial part of the events or omissions giving rise to the claim[s] occurred."  28 U.S.C. § 1391(b)(2).  Therefore, viewing the evidence in the light most favorable to plaintiffs, the Court finds that venue is proper in this district.

## IV. Conclusion

For these reasons, the Motion to Dismiss [Doc. 6] filed by defendant Hospitality International Group, LLC, is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE